Mallory *v.* Hitchcock.

FREDERICK A. MALLORY *vs.* WELCOME G. HITCHCOCK.

Where the legal and equitable estate both become vested in the same person, there will be no merger of the two estates if it is for the interest of the owner to keep them distinct.

In 1829 *G* and his wife mortgaged a piece of land which they owned as tenants in common, and in the wife's moiety of which the husband had an estate as tenant by the curtesy. In 1831 *B* attached *G's* interest in the land, and in April 1834, having obtained judgment, had it set off to him on execution. In January 1834 the mortgage was assigned to *F*, and at the same time *G* and his wife conveyed to *F* all their remaining interest in the land. In 1835 *F* obtained a decree of foreclosure against *B*, and *B* paid the mortgage debt before the expiration of the time limited for redemption, but *F* made no conveyance to him. The petitioner had acquired the title of *B*, by a purchase from his administrator in 1850, but the sale was of the land alone and not of the mortgage debt. *B* and the petitioner had been in possession since 1834, and, since the redemption of the property in 1835, had claimed the land to be exclusively their own and believed it to be so. *B* while in possession had received rents and profits sufficient to satisfy the mortgage debt. In 1852 *F* conveyed his interest by quitclaim deed to the respondent. The wife of *G* died in 1854, and *G* in 1857. After his death the respondent brought an action of ejectment against the petitioner to recover possession of the moiety originally belonging to the wife. On a bill in equity to restrain him from the prosecution of this action, and to compel him to convey to the petitioner his title to this moiety, it was held:—

1. That the mortgage interest assigned to *F* was not merged in the equity of redemption in the wife's moiety, which was conveyed to him at the same time.

2. That, on the payment of the mortgage debt by *B* to *F*, under the decree of

foreclosure, the mortgage interest alone passed to *B*, and the equity of redemption ⸺ ˙ᵉ wife's moiety remained in *F*.

3. Th... ⸺ ⸺ on acquiring this mortgage interest, would have had a right to foreclose *F* ⸺ ⸺ ᵇᵉ should pay a portion of the mortgage debt, yet as he had not done so, and had since received rents and profits from the land sufficient to pay the debt, it was now too late for him or those deriving title from him to foreclose.

4. That, although *B* had acquired an absolute right to the husband's entire interest, including his life estate in the wife's moiety, and therefore a right to the rents and profits from that moiety during the husband's life, yet, as the wife stood in the position of a surety, by having mortgaged her land for her husband's debt, it was equitable that the rents and profits should be applied in satisfaction of the mortgage debt, so as to relieve the wife's moiety.

5. That as *B* and the petitioner held possession of the wife's moiety rightfully, so long as the husband's life estate continued, their possession could not be considered as adverse to *F*, who held the reversion in the moiety.

BILL in equity, to obtain the title to certain real estate, and for an injunction against the prosecution of an action of ejectment. The facts were specially found by the superior court.

The land in question was an undivided moiety of a tract of eighty-five acres, which moiety formerly belonged to Cynthia Geer, the wife of David Geer. In 1829, David Geer, and Cynthia his wife, who then owned the tract as tenants in common, and in the wife's moiety of which he had a life estate as tenant by the curtesy, mortgaged the land, by their joint deed, to the First Ecclesiastical Society of the town of Kent, to secure a debt of four hundred dollars. The mortgage embraced also a separate piece of land of fifty-five acres, belonging to the husband in severalty. In 1831, Clark Beardsley, (from whom the petitioner's title was derived, as hereinafter stated,) attached all Geer's interest in both pieces, and having obtained judgment, in April, 1834, and while the lien of the attachment continued, levied an execution on the interest attached, and had it set out to him on the execution. In January 1834, the Ecclesiastical Society assigned the mortgage, and by quitclaim deed conveyed all the mortgaged premises, to John R. Fuller, and on the same day Geer and his wife, by a quitclaim deed, conveyed to him all their remaining interest in both pieces of land. In 1835, Fuller obtained a decree of foreclosure upon the mortgage, against Beardsley, limiting the time for the redemption of the property to the first day of

March, 1836. Before the expiration of the time limited Beardsley paid the mortgage debt, but no conveyance of any kind was executed by Fuller to him. In 1834, upon the levy of his execution on the land, Beardsley took possession of both pieces, and held the fifty-five acre tract until 1838, when he disposed of it, and the eighty-five acre tract until his death, in 1847. His legal representatives held possession of the latter tract, after his death, until 1850, when it was sold by his administratrix, upon an order of the court of probate, to Alvin C. Beardsley, who immediately after sold and conveyed all the interest so acquired to Mallory, the petitioner. The petitioner at once took possession, and had held possession down to the time of trial; and it was found that the petitioner and those under whom he claimed had held continuous possession from 1834, and, from the time of the redemption in 1835, had claimed the land as exclusively their own, and supposed it to be so. It was however found that neither the administratrix of Clark Beardsley, nor Alvin C. Beardsley, in selling and conveying the land, sold or transferred, or intended to sell or transfer, the debt secured by the Ecclesiastical Society mortgage, but simply the land itself. The rents and profits received by Beardsley from the eighty-five acre tract, while it was in his possession, with the avails of timber and a barn sold from it, were more than sufficient to satisfy the entire mortgage debt, and it was found by the court that the mortgage debt was paid. In 1852 John R. Fuller conveyed all his interest in the tract to Benjamin Hitchcock, who died intestate in 1856, leaving Welcome G. Hitchcock, the respondent, and William Hitchcock, his sole heirs at law. Cynthia Geer died in 1854, and David Geer in 1857. After the death of David Geer the respondent brought an action of ejectment against the petitioner, to recover possession of the moiety of the eighty-five acre tract originally belonging to Mrs. Geer. The bill prayed for an injunction against the further prosecution of this suit, and for a conveyance to the petitioner, or a vesting in him by the decree of the court, of the legal title to the moiety in question.

Upon these facts the superior court dismissed the bill, upon

which the petitioner brought the case before this court by motion in error.

*Hubbard* and *Ransom*, for the plaintiff in error.

1. The mortgage originally made by David and Cynthia Geer, was a mortgage of all the interest of both. It left in them only an equity of redemption. By the levy of his execution on the interest of the husband, Beardsley became the absolute owner of the interest levied on. That interest could not be redeemed out of his hands. When he afterwards acquired the mortgage interest, by redeeming the property out of Fuller's hands, to whom the mortgage had been assigned, there was at once a merger of the mortgage interest in the equity of redemption which he held, so that, so far as the husband's original interest in the land was concerned, the mortgage was extinguished. We claim that the same merger of the mortgage interest in the wife's equity of redemption took place when both those interests became vested in Fuller. He then held the mortgage and the wife's equity of redemption. Why did not the particular estate, the mortgage interest, merge in the general estate, the equity of redemption? It was said in the court below that it could not merge because of the intervening attachment of the land by Beardsley. But this was an attachment of the husband's interest alone, and it is the wife's moiety alone that we are now considering. Our position that such a merger resulted, is sustained by the authorities. *Forbes* v. *Moffat*, 18 Ves., 389. *Gardner* v. *Astor*, 3 Johns. Ch., 53. *Burnet* v. *Denniston*, 5 id., 35. *Mills* v. *Comstock*, id., 214. *Starr* v. *Ellis*, 6 id., 393. *James* v. *Morey*, 2 Cowen, 246. On the payment of the mortgage debt by Beardsley to Fuller, under the decree of foreclosure, Beardsley became entitled to all the interest that Fuller held. As Fuller made no conveyance, the legal title which he held to the wife's moiety did not pass, but the equitable title did.

2. If however the merger did not take place, and Beardsley did not acquire the interest of Fuller in the wife's moiety by force of the redemption, yet he and those claiming under him

have acquired a title by adverse possession. They are found to have been in possession since 1834, claiming the whole land as their own and believing it to be so. The statute of limitations was not prevented from running by the overture, for the interest of the wife had been conveyed to Fuller, who was the party against whom the statute was running. And it is no answer to our claim that the tenancy by the curtesy existed, since the entire property, the wife's reversion as well as the husband's curtesy, was mortgaged, and the mortgagee is regarded as holding adversely to the mortgagor, so that the right of redemption was lost in fifteen years. Fuller could have redeemed at any time, if he is to be regarded as having retained an equity of redemption in the wife's moiety, and his neglect to redeem for fifteen years is equivalent to a foreclosure of the mortgage. *Crittendon* v. *Brainard*, 2 Root, 485. *Skinner* v. *Smith*, 1 Day, 124. *Lockwood* v. *Lockwood*, id., 295. *Bunce* v. *Wolcott*, 2 Conn., 27. *Jarvis* v. *Woodruff*, 22 Conn., 548. *Haskell* v. *Bailey*, id., 569.

3. As the land was held by us adversely at the time of the deed of Fuller to Hitchcock, that deed conveyed no title. They were both out of possession. Rev. Stat., tit. 29, § 15.

4. The court below erred in holding Beardsley and those claiming under him accountable for the rents and profits of the land. He had become the absolute owner of the husband's moiety, and the husband's life estate in the wife's moiety. The rents and profits from both moieties would have been the absolute property of the husband, if he had not made the mortgage, and were therefore, after the levy of the execution on those interests, the absolute property of Beardsley. How then he could be held to account for them it is not easy to see. They were his own and he could apply them as he chose. The question whether, after the termination of the husband's life estate, he might not have been liable to account for the rents and profits from the wife's moiety, is a different one, depending upon whether that moiety had passed to him or remained the property of Fuller, but until then the rents and profits were his own absolutely.

*G. C. Woodruff* and *Sanford*, for the defendant in error.

1. The petitioner has no claim whatever upon the moiety originally owned by Cynthia Geer. The mortgage to the Ecclesiastic: Society left in her an equity of redemption, which was afterwards conveyed by her to Fuller, and which has passed by Fuller's deed and by inheritance to the respondent and his brother. The husband had also an equity of redemption in his moiety and in his life estate in the wife's moiety. All the interest of the husband was taken on execution by Beardsley, whose interest has passed to the petitioner. By the death of the husband the life estate in the wife's moiety was determined, and of course all interest of the petitioner in that moiety. The mortgage debt having been satisfied by the rents and profits of the mortgaged property, the wife's moiety is no longer to be regarded as incumbered by the mortgage. Thus the petitioner and the respondent (with his brother) hold the land precisely as the husband and wife did before the mortgage, as tenants in common.

2. But the petitioner claims to be equitably entitled to the wife's moiety, on the ground that upon the conveyance of the mortgage interest to Fuller by the Ecclesiastical Society, and of the equity of redemption by Geer and his wife, the two estates became merged into one, and could not again be separated, and that consequently, upon the redemption of the property by Beardsley, the entire interest in the land passed to him. But it is not found that there was such a merger, and it is not a necessary result as a matter of law. It is laid down in *Forbes* v. *Moffat,* 18 Ves., 389, cited on the other side, that estates may be kept distinct when they would otherwise merge, where it is for the interest of the owner to keep them distinct. Here it was manifestly for Fuller's interest to do so, and his intention to do it is shown by his refusal to convey this interest to Beardsley and by his subsequent conveyance of it to Hitchcock. A merger moreover would have been prevented by the intervening attachment of the husband's interest by Beardsley, so that, so far as his interest was concerned, Fuller had not the entire estate. On redeeming the mortgaged premises from Fuller, Beardsley got only what the

law would give him, as Fuller made no conveyance. And the conveyance from the administratri. Beardsley, it is expressly found, conveyed only the land, not the mortgage interest, and therefore could have carried the interest acquired by the levy of the execution, which was the interest of the husband alone.

3. It is said that the mortgage debt is not to be treated as paid, and that the court ought not to have applied to it the rents and profits received from the land, as the equity of redemption was owned by Beardsley, and he was not bound therefore to account for the rents and profits. But although, as against the husband, he might not have been accountable, yet he would be so as against the wife, who is to be regarded as a surety, and who is entitled to an application of the rents and profits, which were the husband's property, to the payment of the debt, so as to save her land. And this is clearly so, if there was no merger, as the mortgage was in that case still a subsisting one so far as the wife's interest in the land was concerned. *Harrison* v. *Wyse*, 24 Conn., 1.

4. Again it is said that no title passed by the deed of Fuller to Hitchcock, because the land was holden adversely by other parties. If this were so it would be a good defense at law, and make a resort to equity unnecessary. But the possession of Beardsley and his successors was a rightful one till the death of David Geer, in 1857, and they would be regarded as holding his original interest, to which they were entitled, and not the interest of the wife, which was not then the subject of possession and to which they were not entitled. Nor is there anything in the claim that a title has been acquired by adverse possession. The occupation of a tenant for life is never an ouster of the remainder man. But if a title had been thus acquired it would also constitute a good defense at law.

HINMAN, J. This is a bill, the object of which is to cause the defendant to be enjoined from prosecuting an action of disseisin, to recover possession, as tenant in common with the plaintiff, of eighty-five acres of land. Whatever of difficulty there is in the case seems to arise principally from the compli-

cation of the numerous facts in respect to the title, and to vanish on such a ___ement of them as to be easily understood, which can be ___accomplished without a very particular reference to ___the various documents referred to and recited in the record.

In 1829 David Geer and his wife Cynthia owned the whole eighty-five acres as tenants in common, and mortgaged them to the First Ecclesiastical Society in Kent, to secure a note for four hundred dollars. Such proceedings have since taken place, by deeds, the levy of an execution, and orders and decrees of probate, that the husband's title to the property, both that which he had in his own right, as well as his interest as tenant by the curtesy in his wife's moiety, has now become vested in the plaintiff; and as, on the face of the proceedings, the whole title to the eighty-five acres would have passed had the whole been in the husband, the question is whether they, in connexion with the length of time that has elapsed, and the possession that has accompanied them, have divested the defendant, and those under whom he claims, of their interest in the moiety originally belonging to Mrs. Geer. To determine this it is necessary to state the conveyances in respect to her title, and in connection with them to allude to some of the transactions through which the plaintiff derives his title. The mortgage to the Ecclesiastical Society was assigned in January, 1834, to John R. Fuller, and Geer and his wife then joined in a quitclaim deed of the premises to him; so that Fuller then became vested with Mrs. Geer's equity of redemption, and with the society's mortgage, and with nothing more, as Geer's interest had previously been taken from him by the proceedings under which the plaintiff claims title. In 1835 Fuller foreclosed the society mortgage, but, before the decree took effect, Clark Beardsley, who held the interest previously owned by David Geer, including his interest as tenant by the curtesy, redeemed, by paying up the mortgage under the decree. Cynthia Geer died in December, 1854, and her husband in April, 1857. The defendant now has the title derived from the deed of Cynthia Geer and her husband in January, 1834.

Clark Beardsley's interest in the land was, after his decease,

sold by his administratrix to the grantor of the present plaintiff; but the superior court finds that the debt secured by the mortgage to the society was not intended to be, and was not in fact, sold, but simply his interest in the land. This fact shows that the petitioner has no interest derived from Clark Beardsley in consequence of his redemption of the society mortgage. He, Beardsley, redeemed that mortgage in order to preserve his interest in the husband's estate for life in the wife's moiety, as well as his interest in Geer's own moiety. If that gave him the right to foreclose Fuller as the assignee of Mrs. Geer's equity of redemption, it was a right which he never exercised, and which it would seem it is now too late to exercise, if the finding of the court is correct, that it has been paid by the reception of the rents and profits of the estate since it has been in the possession of the plaintiff and those under whom he claims. But, however this may be, if, as is expressly found by the court, the present plaintiff did not purchase any interest in that mortgage, we do not see what right he has to call upon the court for relief in respect to it.

It was said, however, and much stress was laid upon the claims, first, that the equity of redemption purchased of Mrs. Geer by Fuller, became merged in the legal estate, which he also purchased of the society, and which subsequently became Beardsley's upon his paying the mortgage under the decree of foreclosure ; and secondly, that the equity was barred by the statute of limitations, on the ground that the possession of Beardsley and those who claim under him was adverse.

We think that neither of these claims can be sustained. Fuller had an interest in keeping the legal and equitable estates distinct, and, where this is the case, there will be no merger. Besides, Beardsley is not the assignee of Fuller ; he merely paid to him, as the holder of it, the society mortgage ; and by such payment he could acquire no rights except such as Fuller could claim as assignee of that mortgage, not such as he acquired by reason of his deed from Mrs. Geer. It was at first the husband's debt, though the wife's property was in part pledged for it. Beardsley had become the owner of all the husband's property which had been mortgaged with his

wife and as such holder, as well as the holder of the husband's life estate in her moiety, he paid the debt, and we think under the circumstances it was extinguished by that payment. If he ever had any right to insist upon a payment of a portion of it by Fuller as assignee of the wife, he made no claim for it at the time, but chose to pay it as any other holder of property mortgaged pays to the holder of such mortgage.

The plaintiff has no claim arising from adverse possession. The husband as tenant by the curtesy could of course hold the land till his death. The plaintiff and those under whom he claims did hold it under this title till the death of Geer in 1857, when, if ever, the adverse possession must have commenced.

It was said again that Fuller's deed was void because he and Hitchcock were out of possession when it was given. But it was merely a quitclaim deed of an interest not then denied but admitted. Beardsley, or others under him, were at the time rightfully in possession, and claiming only a right to possess as owners of the husband's life estate ; and this was admitted. It was not therefore a deed of anything of which any body had been ousted, but amounted merely to an assignment of her right, which carried with it only a right to the possession on the death of Geer, the husband.

We have not therefore discovered any error in the judgment of the superior court, and it must therefore be affirmed.

In this opinion the other judges concurred ; except SANFORD, J., who, having been consulted in the matter when at the bar, did not sit.

*Judgment affirmed.*