## SWAR'S APPEAL.

A widow's lien for her interest on a third of the valuation of her intestate husband's land, is not divested by a sheriff's sale on a judgment against any one or all of his children, or collaterals.

Where, therefore, part of the land, which had been decreed on partition by the Orphans' Court to a son, who gave security to the widow and other children, was sold by the sheriff on a judgment against the son; *it was held*, that the proceeds should be applied to the judgment against the son, and that the purchaser should hold subject to the lien of the intestate's creditors, as well as to the payment of the interest on the widow's third during her lifetime, and the principal at her death.

But a judicial sale, at the suit of any one of the intestate's creditors, passes the estate clear of the widow's encumbrance.

APPEAL by Hiram B. Swar, for the use of Levi Kline, from the decree of the Court of Common Pleas of Lebanon county, in the matter of the appropriation of the money arising from a judicial sale of the real estate of Adam Miller, junior.

The material facts in this case are fully stated in the opinion of this Court.

On the appeal to this court, the following error was assigned:

The court erred in decreeing the money in court to be paid to Philip Shower, and in not decreeing it to the judgment of Hiram B. Swar.

*McCormick*, for the appellant, argued, that when there is a charge of an annual payment, or maintenance of a person for life, it becomes a lien which a sheriff's sale on a younger judgment cannot divest. To this position he cited Kean *v.* Fisher, 1 Watts, 259; Knaub *v.* Essick, 2 Watts, 282; Mentz *v.* Menor, 8 Watts, 296.

He also contended, that whenever the land passes subject to such a charge, it passes subject also to all prior judgments or liens. Mix *v.* Ackla, Watts, 716.

*John Weidman*, for appellee.

We claim the money under the general rule long since established, that a purchaser at any judicial sale takes the land discharged from all liens, whether of record or not, with the exception of prior mortgages or land charged with an annual payment during the life of another. In this respect, there is no distinction between a sale made by order of the Orphans' Court and a sheriff's sale. In McLanahan *v.* Wyant, 1 Penna. Rep. 112, this doctrine is distinctly stated.

The proceeds of sale must, in the first place, be applied to the payment of liens, which existed in the lifetime of the intestate, according to their priority. So strictly has this rule been observed by the Supreme Court, that in Luce *v.* Snively, 4 Watts, 396, they decided that a purchaser of land at sheriff's sale, *sold as the property of the heir*, takes it discharged from the lien under the act of 1797, (and of course under the latter act also,) of the debts of the ancestor. He also cited, for the purpose of showing that the lien in this case was discharged by a judicial sale, Lyle *v.* Foreman, 1 Dall. 480; Nichols *v.* Postlethwaite, 2 Dall. 131; Sharman *v.* Farmers' Bank of Reading, 5 Watts and Serg. 373; Purdon's Dig. 441.

The opinion of the court was delivered by KENNEDY, J.

Appeal by Hiram B. Swar, for the use of Levi Kline, from the decree of the Court of Common Pleas of Lebanon county, in the matter of the appropriation of the money arising from a judicial sale of the real estate of Adam Miller, junior, consisting of a lot of ground situate in Millerstown, in Lebanon county, with a tavern, &c. thereon erected. The property thus sold formed a part of the real estate of which Adam Miller, senior, the father of Adam Miller, junior, died seised, in 1840. Adam Miller, senior, died intestate, on the 14th of May, 1840, leaving a widow and six children his heirs, to whom his real estate descended upon his death. Afterwards, in a proceeding had in the Orphans' Court of said county, for the purpose of ascertaining the value of said estate and making partition thereof to and amongst those interested in it and entitled thereto; the said lot of ground with the improvements thereon and the appurtenances thereto belonging, were decreed by the said Orphans' Court to the said Adam Miller, junior, in fee, at the valuation of one thousand and fifty dollars, upon his giving security for the payment of the five-sixths of the two-thirds thereof to the other children and heirs of the intestate within one year; also for the payment of the interest annually to the widow thereafter, on the remaining third, during her life, and at her death, for the payment of the five-sixths of the principal thereof to the other children

and heirs of the intestate, which security was accordingly given.
Afterwards, on the 13th of April, 1843, Hiram B. Swar obtained a
judgment in the Court of Common Pleas of Lebanon county against
Adam Miller, junior, for five hundred dollars, which became a lien from
that date upon the interest of Adam Miller, junior, in the lot with its
appurtenances. Adam Miller, senior, the intestate, however, died
indebted to Philip Shower in the sum of two hundred and seventy-eight
dollars and fifty-eight cents, for which the latter obtained a judgment
in the Court of Common Pleas of Lebanon county, against the admin-
istrators of the intestate, to which the widow and heirs of the deceased
were also made parties, on the 14th of August, 1844. The pro-
perty or lot of ground was taken in execution, by virtue of a fieri
facias sued out upon the judgment in favour of Hiram B. Swar, for
the use of Levi Kline, against Adam Miller, junior, condemned to sale,
and afterwards, by virtue of a writ of venditioni exponas issued in the
same case, to November term, 1844, was sold by the sheriff to Levi
Kline, for the price of two hundred and fifty-one dollars, which the
sheriff, after deducting therefrom thirty dollars and ninety-one and a
half cents for the costs, brought into court, that the court might appro-
priate the same. The court, after hearing the parties upon this state-
ment of the facts taken from the records, decreed and ordered, that the
money in court arising from the sale of the lot should be appropriated
and paid to Philip Shower on his judgment. From this decree of the
court below, Hiram B. Swar, for the use of Levi Kline, has appealed,
alleging that the court erred in not appropriating the money towards
the payment of his judgment and claim against Adam Miller, junior.
That under the particular circumstances of the case, the interest of
Adam Miller in the lot of ground with its appurtenances, was all that
could be levied on and sold under his judgment, and must therefore be
considered all that was sold and purchased. In other words, that the
right of Adam Miller, junior, in the lot, was levied on and sold subject
to the claims of the creditors of his father, the intestate, which encum-
bered it; as well as subject to the claim of the widow and that of
the other heirs, to the one-third of the valuation payable at her death.

The court below seems to have thought that this case could not be
distinguished from the case of Luce v. Snively, 4 Watts, 396, and that
it was ruled by it. In this, however, we think the court were clearly
mistaken; for in Luce v. Snively, there was no lien on the estate or
land sold, prior to that under which it was sold, which was to be paid
annually, to any one for an indefinite number of years or uncertain
period, as in this case. Here the three hundred and fifty dollars, the
one-third of the valuation money of the property sold, is not to be paid

until the death of the widow, but the interest on the same is to be paid annually to her during her life, a period that is wholly uncertain, and for which no accurate calculation can possibly be made. The cash value of this encumbrance, therefore, cannot be ascertained, without which, it is impossible that it can be paid out of the purchase money. Nothing of this sort occurred or was presented in the case of Luce v. Snively. That case was settled according to the rule which had been established and recognised in many preceding cases, some of which are there cited. . The rule by which the case was decided is, that a judicial sale of real estate under an encumbrance suffered by the owner of it at the time, discharges it from all liens and encumbrances created upon it by prior owners thereof, through and from whom the owner at the time of sale derives his right and title to the estate. But this being only a general rule is subject to exceptions of course, whenever it cannot be applied without working manifest injustice, either to the owner of the estate or to those having claims against it. The case under consideration must, as we think, for this reason, be regarded as an exception, and would seem to be designated as such, in the case of Luce v. Snively, which makes it a little surprising, that the court should have taken the general principle, laid down in that case, as the rule of their decision, without attending to the exceptions there mentioned.

The case of Mix v. Ackla, 7 Watts, 316, shows most clearly that the present does not come within the general rule, but forms an exception to it. In fact, this case is substantially the same with that case, and must be considered as ruled by it. There, a father devised to his son a tract of land encumbered by a judgment against himself, charging it with the maintenance of his widow during her life. Upon a sale of the land by the sheriff, under an execution issued upon a judgment had against the son for his own debt, it was held that the proceeds of the sale should be applied to the judgment against the son, and that the purchaser took the land encumbered by the judgment against the father, and subject to the widow's maintenance. It was so held, mainly upon the ground that the lien which a widow has on the land, late of her deceased husband, for her interest therein, which is to endure for life and coming to her annually, is not divested by a sheriff's sale of the land, upon a judgment whose lien has been obtained subsequently to her interest accruing therein; for which, Fisher v. Kean, 1 Watts, 259, is cited. See also Mentzer v. Menor, 3 Watts, 296. But the claims of the creditors of the deceased husband are paramount to any claim or interest that the widow can have in the estate; and hence. if the estate be sold at their suit, she will thereby be divested of all claim to it. It may possibly be said, that the

widow's interest in such case might be preserved by selling the land or estate clear of all encumbrances, and after paying the claims against the husband, by placing the one-third of the residue out at interest during the life of the widow for her benefit, and leaving the principal to be paid on her death to those entitled to it. But this would be in opposition to the principle which has uniformly governed, that the land cannot be discharged of the widow's claim by a judicial sale under a subsequent lien, when there are no existing liens against it on account of the husband, or any prior owner's debts. Thus far, the principle in favour of the widow's claim is incontrovertibly established, and it is very manifest that it would have been unjust, as regarded her, had it been established otherwise; for it would have been putting it in the power of the heir, devisee, or subsequent owner of the estate, by contracting debts and refusing to pay them, to divest the widow of her lien thereon, by forcing their creditors to proceed and have a judicial sale made thereof, for the purpose of obtaining payment of their claims. And it would likewise be in opposition to the decision of this court, in Mix *v.* Ackla, where the existence of a debt and lien on the estate against the husband at the time of his death, was ruled to make no difference, either in divesting the claim of the widow, or discharging the encumbrance on account of the judgment against the husband. Indeed it is also evident in such case, that without selling the estate out and out, so as to divest the widow of her claim, it would be dealing unfairly with the heir, devisee, or holder of the estate for the time being, to permit the creditors of the deceased husband to take the money arising from the sale; for it might or would be appropriating exclusively the interest of the heir or devisee in the estate, to the payment of the husband's debts, when the widow's interest or claim was equally liable to pay; for it is perfectly clear, in such case, that she cannot claim or hold any interest in the estate more than the heir or devisee, except in what shall remain after payment of all her husband's debts. It would, therefore, seem to be right in a case like the present, if a creditor of the heir, devisee, or any subsequent owner of the estate, should proceed by execution to levy his debt out of it, that he should be confined to the interest of his debtor; so that the levy and sale shall not effect the claims of the creditors of the husband, if there be any, nor that of the widow; and so leave it to the creditors of the husband to proceed at pleasure against the whole estate as long as their claims shall remain liens upon it, and to sell it discharged from all encumbrances and claims of subsequent date to theirs. And if any surplus should remain in this latter case, of the money arising from the sale, after paying the debts of the husband, the one-third thereof might be put to interest for

the widow during her life, and the remaining two-thirds thereof applied to the payment of the lien debts, if any existed and still remained unpaid, of the subsequent owners and holders of the estate; if none existed, then it might be paid to the subsequent owners and holders of the estate themselves, and the one-third put to interest for the benefit of the widow during her life, be applied in the same manner after her death as the two-thirds.

> The decree and order of the court below is reversed, and the money arising from the sale of the lot sold as the property of Adam Miller, junior, under the execution and judgment of Hiram B. Swar, for the use of Levi Kline, is ordered to be paid to the said Hiram B. Swar, for the use of Levi Kline; and it is further ordered that Philip Shower, the appellee, pay the costs of the proceeding in the court below, and the costs of this appeal.