Jewett, Ch. J.
 

 The principal ground of defence to the bill of complaint taken by the several defendants in their answers, are, 1st. That the complainant, Mrs. Kelsey, previous to her marriage, had been fully paid her legacy by the devisees N. and B. Coles; and if not, 2d. That on the first day of May, 1830, being then of full age, she released to said devisees her legacy, by means of which the lands devised to them, and which they subsequently conveyed to the defendant Western, were discharged of the lien created by the will of the testator for the payment of it. On the argument the
 
 second
 
 ground assumed by the answers was substantially abandoned, and a new ground taken, as a substitute, namely: That the legacy had been extinguished by the taking, by Mrs. Kelsey, before her marriage and after she was of full age, a bond from N. and B. Coles, conditioned to pay to her, &c.
 
 “the just and full sum of money which may be found due her from the estate of her late father.”
 

 The first ground of defence is not before this court upon this appeal. The master reported that the legacy in question had not been paid in full; and allowing certain payments there was due upon it, on the 17th. day of February, 1846, $2,811 67, to which the defendant took certain exceptions. The cause was
 
 *505
 
 brought to a hearing upon the equity reserved in the decree of reference, and upon the subsequent proofs allowed to be taken, and the report of the master and exceptions thereto. That resulted in a decree before the assistant vice chancellor, overruling the exceptions to the master’s report, with costs to be paid by the defendant, and a dismissal of the complainant’s bill with costs to be paid by the complainants.
 

 From this decree the complainants appealea to, tne supreme court, but
 
 only
 
 from that part whereby the bill was dismissed» and directing the complainants to pay costs. As to the residue of the decree, as neither appealed from it, both parties admitted it to be correct.
 
 (Norbury
 
 v.
 
 Meade, 3 Bligh,
 
 261.) If the-defendant felt himself aggrieved by that part of the decree, from which the complainants did not appeal, he should have brought a cross-appeal. It is well settled, that only that part of a decree which is appealed from is brought before the appellate court for review. The defendant is, therefore, concluded by the decree of the assistant vice chancellor, overruling his exceptions, from raising the question as to the payment of the legacy in this court. That part of the decree not having been appealed from by either party, the court below were right in holding that the exceptions to the master’s report were not before that court.
 
 (Clowes
 
 v.
 
 Dickinson, 8 Cowen,
 
 328;
 
 Sands
 
 v.
 
 Codwise,
 
 4
 
 John. Rep.
 
 536; 2
 
 Hoffman’s Pr.
 
 43,
 
 62; Mapes
 
 v. Coffin, 5 Paige, 296.)
 

 As to the second ground taken by the defendant, either by the answers or on the argument, I am of opinion it cannot be sustained. The instrument set up by the answers as a release, does not purport to be of that character. It is merely written
 
 evidence
 
 under seal, that Mrs. Kelsey had, on the first day of May, 1830, received from N. and B. Coles an obligation, bearing date the 30th day of April, 1830, and expressing the object for which it was received, to wit: to be “
 
 in full of all demands
 
 whatsoever,
 
 which
 
 /,
 
 my executors or
 
 administrators,
 
 may have against my said brothers, their executors or administrators, by virtue of the said last will and testament of my late father.”
 
 It amounts to nothing more than a full admissicn of the reception by her of an obligation in satisfaction of any demand
 
 *506
 
 which she had against N. and B. Coles, by virtue of her father’s will. If then she is barred of a remedy for the recovery of her legacy as such, it must result from some other act than the making of such admission. The fact of receiving such an obligation must exist, and that it did exist, was insisted upon on the argument. The answer is, that such fact is- not put in. issue by the pleadings, and the decree must conform to the allegations as well as the proofs in the cause. The fact put in issue is whether she made the admission, and not whether she in truth received the obligation. It is nowhere alleged by the defendants or either of them t>y their answers, that such an
 
 obligation
 
 was made, or received by Mrs. Kelsey. The extent of any allegation in that respect is, that she admitted that such obligation was received by her.
 

 It is well settled that no proofs can be offered of facts not put in issue by the pleadings, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, and therefore particular care must be taken to put in issue in the bill, whatever is intended to be proved by the complainant in the cause, otherwise he -will not be permitted to give it in evidence, for the court pronounces the decree
 
 secundum allegata et probata.
 
 The reason of which is, that the adverse party may be apprized against what suggestion he is to prepare his defence.
 
 (Cooper’s Pl.
 
 7;
 
 Welford’s Pl.
 
 85;
 
 Smith
 
 v. Clark, 12
 
 Ves.
 
 481;
 
 Crocket
 
 v.
 
 Lee, 7
 
 Wheaton, 522;
 
 Lyon
 
 v.
 
 Tallmadge,
 
 14
 
 John. R.
 
 516;
 
 Consequa
 
 v.
 
 Fanning,
 
 3
 
 John. Ch.
 
 587;
 
 James
 
 v.
 
 McKernon,
 
 6 John.
 
 R.
 
 563.)
 

 This rule is equally applicable to a defendant who naakes a defence by answer. It requires him, besides answering the plaintiff’s case, as made by the bill, to state to the court in his answer, all the circumstances of which he intends to avail himself by way of defence; for he is bound by his answer to apprize the plaintiff in an unambiguous manner, of the nature- of the case he intends to set up; and he cannot avail himself of any matter in defence, which is not stated in his answer, even though it should appear in his evidence.
 
 (Stanley
 
 v.
 
 Robinson,
 
 1
 
 Russ.
 
 &
 
 Myl.
 
 527; 2
 
 Dan. Ch. Pr.
 
 240; Wel.
 
 on Eq. Pl.
 
 363.)
 

 
 *507
 
 This absence of the allegation is not cured by the provisions of the code. It is not a case of variance between the allegations in a pleading and the proof, which the code was designed to aid. When the pleading sets up a particular matter as the ground of action or of defence, and fails to present it as proved in some particular, so that there is strictly a variance between the pleading and the evidence, §§ 169, 170,171, of the code, apply and provide for the case. But when, as in this case, there is a total want of any allegation in the pleading of the subject matter as a ground of action or of defence, the want of such allegation is not cured by the code, so as to allow of a decree to be founded upon the proof without allegation.
 

 But conceding that the answers of' the defendants sufficiently alleged the giving of the bond by N. and B. Coles in satisfaction of the legacy, how stands the case ? It is true, that as there is no express charge of the payment of the legacies bequeathed by the testator upon his real estate,
 
 in exoneration
 
 of his personal estate—the latter is the primary fund, as well for the payment of his debts and funeral expenses, as for the legacies bequeathed.
 
 (Hoes aad others
 
 v.
 
 Van Hoesen,
 
 1
 
 Comst.
 
 120;
 
 Livingston
 
 v.
 
 Newkirk,
 
 3
 
 John. Ch.
 
 319;
 
 Tole
 
 v.
 
 Hardy,
 
 6
 
 Cowen,
 
 333.) The legacies given by the testator became an equitable lien upon the lands charged with their payment, and a personal charge upon N. and. B. Coles, devisees of the lands, in case of their acceptance of the devise, which a court of equity will enforce.
 
 (Dodge
 
 v.
 
 Manning,
 
 1
 
 Comst.
 
 298;
 
 Harris
 
 v.
 
 Fly,
 
 7
 
 Paige,
 
 420;
 
 Glen
 
 v.
 
 Fisher,
 
 6
 
 John. Ch.
 
 34.) It is well settled that an action of assumpsit may be sustained against a devisee for the recovery of a legacy,
 
 exclusively
 
 charged on .the land devised, or on his person in respect to the land devised, if he
 
 enter,
 
 and
 
 promise
 
 to pay. But when
 
 it
 
 is
 
 not-so charged,
 
 a court of law has no jurisdiction to enforce payment of such legacy, though there be an acceptance of the devise and a promise to pass by the devisee. And if there be no express promise to pay, an action at law will not lie to recover a legacy against the devisee
 
 expressly
 
 and"
 
 exclusively
 
 charged on the land devised, or upon the person in respect to the land devised. Jurisdiction m such cases belongs to a court of equity.
 
 (Beecker
 
 v.
 
 *508
 

 Beecker,
 
 7
 
 John.
 
 99;
 
 Kelsey
 
 v.
 
 Deyo,
 
 3
 
 Cowen,
 
 133;
 
 Tole
 
 v.
 
 Hardy, supra; Pelletreau
 
 v.
 
 Rathbone,
 
 18
 
 John.
 
 428;
 
 Deeks
 
 v.
 
 Strutt,
 
 5 T. R. 690.)
 

 So far as the case shows, Mrs. Kelsey, as a legatee, had no claim capable of being enforced at law against N. and B. Coles as devisees, at the time she attained the age of twenty-one years • her legacy was not
 
 exclusively
 
 charged upon the land devised, or upon the persons of the devisees in respect thereto, and -they had not made any express promise to pay it to her. They had accepted the devise, and thereby became personally liable in equity for the payment of it. In addition to such liability, she had an equitable lien upon the land devised, as security for the payment; but as there was not any surplus of personal assets, beyond satisfying the testator’s debts and funeral expenses, the executrix and executors, as such, were not liable at law to her for the payment of her legacy, or any part of it, under our statute. (2
 
 R. S.
 
 114, § 9.)
 

 It is claimed in behalf of the defendant, that this bond being executed and accepted by Mrs. Kelsey after she was of full age, and prior to her marriage, amounted to a waiver in law of the liability which the obligors were under to her, whether it arose in the character of executors or of devisees, and operated to discharge the estate which the testator devised to them, from the lien of the legacy charged thereon. This argument proceeds upon the ground that the claim for the payment of the legacy was in the nature of a simple contract debt; and the taking of a higher security for such claim discharged it
 
 per se;
 
 and also upon the ground that, the taking of a bond by a legatee from an executor of the testator’s will lor the payment of a legacy is a payment or extinguishment of it.
 

 It is agreed, as a general rule, that a creditor’s accepting from his debtor a higher security than he had before, is an extinguishment of the first debt, as if a creditor by simple contract accepts an obligation, this extinguishes the simple contract debt. It proceeds upon a presumption of law, that it is taken in satisfaction of the original debt, but if it appear otherwise, upon the face of the security, it will nrt so operate.
 
 (United States
 
 v.
 
 Lyman,
 
 1
 
 Mason’s Rep.
 
 482, 505.)
 

 
 *509
 
 In this case there was no debt due to Mrs. Kelsey, the legacy bequeathed to her Was not a debt, nor in the nature of a debt, it was a mere gift by will. It transferred to her an inchoate property in the sum of money bequeathed. The relation of debtor and creditor did not exist between N. and B. Coles vand her, in respect to it. The rule referred to, in relation to the effect of taking a higher security for a debt, therefore, has no application here. It is upon the principle that legacies, being gratuities, and not duties, that actions at common law for their recovery are held not to lie; and that the remedy for their recovery must be had in the chancery or spiritual court. Sometimes the common law took notice of a legacy, not directly, but in a collateral way; as when the executor promised to pay the money, if the legatee would forbear to sue for the legacy, it was adjudged a good consideration to ground an action, but that it would not lie for a legacy in specie ; for that would be to divest the spiritual court of what property belonged to its jurisdiction, by turning suits which might be brought there, into actions on the case. (2
 
 Tom. L. D.
 
 422,
 
 tit. Legacy
 
 4.)
 

 Goodwyn
 
 v. Goodwyn,
 
 (Yelv.
 
 39,) among other cases, was referred to by counsel for the defendant, as an authority to the point taken, that the taking a bond from an executor by the legatee is a payment or extinguishment of a legacy. The case was, a man by his will bequeathed £20 to his daughter; the executor entered into a bond of £40 to the daughter for the payment thereof according to the will—the daughter married— her husband sued the executor in the spiritual court as for a legacy. The executor pleaded payment, according to the bond, and because the spiritual judge would not allow this plea, the executor brought a prohibition and showed for surmise the said matter. The court held the surmise good; for the executor, by his entering into the bond to the daughter, for the payment of the legacy, had extinguished the legacy, and made the £20 bequeathed a debt, merely at the common law—and not suable in the spiritual court. And to the same effect is
 
 Gardner’s case,
 
 cited in 8
 
 Mod.
 
 328, and the opinion of Mr. Justice Dodderidge, that an obligation given for payment of a legacy did not totally destroy the nature thereof, but the legatee had it still in his
 
 *510
 
 election either to sue for it in the temporal or ecclesiastical court, was overruled. In
 
 Stewart’s Appeal
 
 (3
 
 Watts & Serg.
 
 476,) it was held that the acceptance of a single bill, of the executor by the legatee for the amount of the legacy, was an ex-tinguishment of it.
 

 The case under consideration is obviously distinguishable from the cases referred to. In this case, the bond which N. & B. Coles executed to Mrs. Kelsey is not conditional to pay a given sum of money bequeathed to her, or as a particular ascertained o alance on account of such legacy due to her, but merely to pay “ the just and full sum of money which may be found due to her from the estate of her late father.” There the payment of the legacies was not charged upon the land of the testator—the eventual payment depended upon there being a sufficiency of personal assets of the testator and a faithful administration of them by the executors. Here, in addition to the liability of the two executors, as devisees of the land, having accepted the devise, the payment of the legacy was secured to the legatee, by the land devised. There, the executor in the case in
 
 Telverton
 
 gave a bond to the legatee to pay the legacy at a certain day. In the other case, the executor gave a single bill, to pay at a certain day, a named and ascertained sum, being the legacy bequeathed. In this case, but for the release, as it is called, showing that the bond was given in full of all demands which the obligee might have against the obligors, by virtue of the last will and testament of her late father, it would, not appear that it had any relation to the legacy.
 

 Was the bond given and accepted as a
 
 substitute
 
 for the legacy ? If it had been, it may be fairly inferred that there would be some evidence of it. The receipt or release, as it is called, would have contained the evidence of the agreement, or intention of the parties, to that effect. It is a special instrument designed to show for what the bond was given, and by its terms indicates only that it was given as a
 
 substitute
 
 for the
 
 personal liability
 
 of the obligors by virtue of the last will, &c. of the testator. Tnat, we have seen, was not a
 
 legal
 
 but an
 
 equitable
 
 liability, to oe enforced only in chancery. The utmost then, that was intended by the parties, was to turn an equitable
 
 per
 
 
 *511
 

 sonal
 
 liability into a legal one—which would enable the legatee to enforce payment, to the extent of the ability of the obligors, in a court of law instead of a court of chancery. It was not intended to affect her claim in any other respect. It was not intended to discharge the land from the lien which existed for its payment. If it had been, it is but reasonable to suppose that the receipt would have contained the evidence of it. It would have shown that the bond was taken not only in full of all demands which she might have against the obligors by virtue of the'will, but in full of her claim upon the land devised for the payment. It seems to me that, taking the bond and receipt together, it is shown that the former is nothing more than a collateral agreement to come to a settlement of the amount due to the obligee on account of her legacy, and to pay the balance which should be found due to her on such settlement; without any intention to extinguish her security for payment upon the land devised.
 
 (Barts
 
 v.
 
 Peters,
 
 9
 
 Wheat.
 
 556;
 
 Day
 
 v.
 
 Leal,
 
 14
 
 John.
 
 404.)
 

 It was made a point on the argument, that the suit should have been revived against the personal representatives of N. & B. Coles who have died since its commencement, and also against a personal representative of N. Coles the elder. The reason urged for this is, that the land conveyed to Western should not be sold to pay the legacy until the remedies are exhausted against the personal estate of the testator, and against N. & B. Coles. It is a sufficient answer to this point, that in October, 1843, an order was made that the cause proceed against Western alone. From that order he took no appeal, and he is therefore concluded by it.
 

 I am of opinion that the decree of the supreme court should be affirmed.
 

 Decree affirmed.