JAMES F. JORDAN, Guardian, *vs.* JAMES DONAHUE *et als.*

A. by his last will charged certain lands with the support of Z. These lands were afterwards conveyed by successive and separate deeds to several purchasers of distinct parcels. Subsequently B., the guardian of Z., brought an action at law against these purchasers, to recover moneys expended in the support of Z.:
*Held,* that the plaintiff's remedy was in equity, and that the action at law would not lie.
Gen. Stat R. I. cap. 178, § 24, provides that "any person having a legacy given to him in any last will and testament may sue for and recover the same at law:"
*Held,* that this statute simply gave a remedy refused at common law, but could not be construed as transforming a right *in rem* to a claim *in personam*, so as to support the plaintiff's action in the present case.

DEBT. On motion to dismiss.

*July* 27, 1878. DURFEE, C. J. This is an action of debt brought by the plaintiff, as guardian of the person and estate of Zerriah Jordan, against the defendants, who have, either directly or by mesne conveyances, purchased of one Levi S. Williams certain lots of land which were devised to him by their former owner, the late Frederick Williams, deceased, subject to a charge for the support of said Zerriah Jordan. The language of the will is not set forth in the declaration, but is given in the plaintiff's brief. It is as follows: "I do hereby order and declare, and my will is, that my two daughters, said Lydia Ann Williams and Zerriah Jordan, have a home and support out of and from the estate devised and bequeathed to said Levi S. Williams, and make a part of the family of said Levi S. Williams, in the same manner and on the same terms and conditions that they have hitherto had and now have in my family," &c. The action is brought to recover of the defendants $807.45, expended by the plaintiff for the support of said Zerriah.

That the language creates a charge is not denied. See *Clapp* v. *Clapp et als.* 6 R. I. 129, and note on page 137. The contention is that no action lies at law against the defendants as purchasers of the land charged, it being admitted that they are purchasers of distinct parcels by separate and successive conveyances. The case comes before us, by motion to dismiss, upon the single question whether such an action is maintainable.

In support of the motion it is urged that law does not afford an adequate remedy, the purchasers being liable in equity only in the inverse order of their purchases. We do not think this, if

correct, is a conclusive reason for dismissing the action. Equity sometimes refuses relief because there is an adequate remedy at law; but law, when duly invoked, gives such remedy as it can without regard to the fact that equity can do better. If a defendant thinks the legal remedy ought not to be enforced, it is for him to proceed in equity, having the action at law enjoined; or perhaps under the new statute, Pub. Laws R. I. cap. 563, § 3, April 20, 1876, he may protect himself by plea of equitable defence.

The question, then, is not whether equity affords a better remedy, which it doubtless does, but whether the action lies at law. If the action were against the devisee it might not be very difficult to allow it, inasmuch as the will seems intended to impose upon him a personal duty or obligation. But can the action be maintained against his grantees? Have they incurred a joint personal liability by separate and successive purchases of the land devised? In *Swasey* v. *Little*, 7 Pick. 296, this question is answered affirmatively, upon the ground that a statute of Massachusetts provides that any person having a legacy given in any last will may sue for and recover the same at common law. Our statute is the same. Gen. Stat. R. I. cap. 178, § 24. Shall we give it the same broad construction? We think not. The Supreme Judicial Court of Massachusetts, having only a limited chancery jurisdiction, is sometimes tempted to overstrain the common law. We think it has yielded to such a temptation in the case cited. If its construction is correct, the effect of the statute is to convert a mere right *in rem* into a right *in personam*, or into a personal liability running with the land and binding every terre-tenant jointly with every other for the legacy until satisfied. We do not think the statute was intended to introduce so great a change. Its principal purpose, doubtless, was to remedy a well known and very serious defect of the common law, namely, that it afforded a legatee no action against an executor or administrator *cum testamento annexo* for his legacy. If it can be held to give an action *in personam* against others than executors or administrators *cum testamento annexo*, we think it must be held to give it against such others only as occupy a similar relation of personal duty or obligation under the will. On this ground a devisee who accepts a devise subject to the payment or satisfac-

tion of a legacy may perhaps be held to be liable to the action, for he may be deemed to be charged *pro tanto* with the execution of the will. But we think it is going too far to hold that the statute likewise gives such an action against mere purchasers of the estate devised, being strangers to the will, in the absence of any language in the will, or in the conveyance to them from which a personal promise or contract on their part can be implied. *Tole* v. *Hardy*, 6 Cow. 333; *Pelletreau* v. *Rathbone*, 18 Johns. Rep. 428; *Kelsey* v. *Western*, 2 N. Y. 500; *Larkin* v. *Mann*, 53 Barb. S. C. 267; *Pickering* v. *Pickering*, 6 N. H. 120; *Sands* v. *Champlin*, 1 Story, 376; *Cary* v. *Cary*, 2 Sch. & Lef. 173; *Taylor* v. *Reynolds*, 2 Houst. 285; *Nash et ux.* v. *Clarke*, 4 Dana, 69.

The plaintiff refers to the Pennsylvania case of *M'Lanahan* v. *Wyant*, 1 Pa. 96, as a precedent in support of the action. The proceeding recognized in that case is peculiar, being in effect a proceeding *in rem*, though in form an action *in personam*. It is more fully explained in *Brown* v. *Furer*, 4 Serg. & R. 213. It seems to have been adopted *ex necessitate*, because the courts in that State have no distinct chancery jurisdiction.

We have in this State complete chancery jurisdiction, and we can, in a suit upon the equity side of the court, work out the rights of all parties without injustice to any of them; see *Kelsey* v. *Western*, 2 N. Y. 500. We have, therefore, no reason for innovating upon the common law further than the statute giving the action at law fairly demands; for even in Massachusetts it is admitted that chancery affords the better remedy; and especially is this so when the suit is against purchasers holding different parcels of the land charged, of unequal values. *Taft* v. *Morse*, 4 Met. 523, 528; and see remarks by Parsons, C. J., in *Farwell* v. *Jacobs*, 4 Mass. 634. The motion to dismiss is granted.

POTTER, J., concurring. We have been referred to cases in Pennsylvania.

The practice there seems to be founded on the ancient English statutes by which merchants, &c., could before certain magistrates acknowledge a debt, and their property and lands were bound by it, and if the debt was not paid at the time, the plaintiff was entitled to execution forthwith, and to have the lands de-

livered to him, and in case of death of the debtor, to *scire facias*, and to have the lands in the hands of the heir, but not the body of the heir, delivered. By statute 23 Henry VIII. cap. 6, this privilege was extended to all persons, whether traders or not. See Chitty's Statutes of Pract. Utility, vol. 1, part 1, 307–11 ; 2 Blackstone Comm. 160, 342. On this recognizance the plaintiff could maintain an action of debt. 1 Chitty Pleading, 127. And when the lands were thus bound and the conusor died, *scire facias* might issue against the tenants of the lands by name or generally, *Jefferson* v. *Morton*, 2 Williams' Saunders, 7, note 4, and 69 *b*, note, to show cause why the plaintiff should not have his execution against the land.

In Pennsylvania in some cases, in settlement of estates, the land in the hands of the heirs, their heirs and assigns, is by statute charged with certain payments ; and in *De Haven et ux.* v. *Henderson*, Supreme Court of Pennsylvania, May, 1878, the court say that the practice there originated in the want of a remedy in equity to enforce the charge. In *M'Lanahan* v. *Wyant*, 1 Pa. 96, 113, the court state their practice, which is substantially the same with the English. See also *Brown* v. *Furer*, 4 Serg. & R. 213.

No such practice has ever prevailed here. The judgment here must be against the person, and equity affords a full and complete remedy. *Motion granted.*